# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **DEBRA COPELAND** | ) | |
| 230002 High Road | | |
| Oakwood Village, OH 44146, | ) | |
| | | |
| Plaintiff, | ) | |
| | | |
| -vs- | ) | **C O M P L A I N T** |
| | | |
| | ) | Trial by Jury Endorsed Hereon |
| | | |
| **THE BOARD OF PARK** | ) | |
| **COMMISSIONERS OF THE** | | |
| **CLEVELAND METROPOLITAN** | ) | |
| **PARK DISTRICT dba** | | |
| **CLEVELAND METROPARKS** | ) | |
| **ZOO,** | | |
| 4101 Fulton Drive | ) | |
| Cleveland, OH 44144 | | |
| | ) | |
| and | | |
| | ) | |
| **LYNN KOSCIELNY** | | |
| 4101 Fulton Drive | ) | |
| Cleveland, OH 44144, | | |
| | | |

Defendants.

## NATURE OF THE ACTION

1.     This is an action instituted under the Age Discrimination in Employment Act

of 1967, as amended, 29 U.S.C. §§ 621.01, *et seq.*, (2019 Supp.), and the Ohio Civil

1

Rights Act, Ohio Revised Code §§ 4112.01, *et seq*., (2019 Supp.) to vindicate state and federally protected rights against unlawful employment practices on the basis of age.

## JURISDICTION AND VENUE

2.  Jurisdiction is invoked pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 626 (b) and (c) and supplemental jurisdiction over asserted state law claims pursuant to 28 U.S.C. § 1367.

3.  With respect to age claims under ADEA, jurisdiction arises pursuant to receipt of a Notice of Right to Sue issued on June 6, 2019. The notice accompanies this complaint and is incorporated by reference as Exhibit 1.

4.  With respect to the Ohio Civil Rights Act, Ohio Revised Code §§ 4112.01, *et seq*., jurisdiction is invoked pursuant to 28 U.S.C. § 1367.

5.  Venue in this Court is proper because the unlawful employment practices alleged were committed within the jurisdiction of the United States District Court for the Northern District of Ohio, Eastern Division.

## PARTIES

6.  Plaintiff DEBRA COPELAND ("Copeland") is a 57-year-old female who, at all relevant times, was employed by Defendant Cleveland Metroparks Zoo who sought to perform her duties free from restrictions on account of age and from retaliation for engaging in a protected activity.

7.  Defendant THE BOARD OF PARK COMMISSIONERS OF THE CLEVELAND METROPOLITAN PARK DISTRICT DBA CLEVELAND

2

METROPOLITAN ZOO (hereinafter, "Cleveland Metroparks Zoo") is an employer as defined by the ADEA and at all relevant times was the employer of the plaintiff.

8.   Defendant LYNN KOSCIELNY was the supervisor of Ms. Copeland at all times relevant and was personally responsible for numerous discriminatory actions materially contributing to the decision to terminate Ms. Copeland's employment.

## STATEMENT OF THE FACTS

9.   Plaintiff Debra Copeland reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

10.   Debra Copeland was hired by the Cleveland Metroparks Zoo ("zoo") on February 20, 1985 for the position of animal keeper.

11.   In August of 1992, Copeland transferred to the Rainforest division of the zoo.

12.   In December 1996, Ms. Copeland was promoted to the position of lead animal keeper in the Rainforest division.

13.   In the early part of the 1990's Ms. Copeland was provided with an intern named Lynn Koscielny.

14.   Ms. Copeland worked with intern Koscielny and was eventually asked by the zoo whether Koscielny should be hired.

15.   Ms. Copeland provided an honest assessment of Koscielny to the zoo that she should not be hired.

16.   Koscielny was not offered the job.

3

17. Between February 1985 through May 2012, Ms. Copeland received stellar reviews for her performance, receiving only three (3) minor "warnings" for alleged infractions such as tardiness.

18. By 2013, Ms. Copeland was one of the more senior members of the team and one of the highest paid animal keepers because of her longevity at the zoo.

19. Ms. Copeland had a celebrated career as an animal keeper, achieving many significant accomplishments for the zoo including successfully completing a free contact ultrasound on a giant anteater, the first person to have done so in the United States.

20. Ms. Copeland designed and was consulted by the zoo in the construction of "squeeze cages," a safer method to administer medications to animals.

21. Ms. Copeland was asked to design and oversee the construction of the habitat for the clouded leopard.

22. Ms. Copeland cared for and assisted in the marketing of newly born otters which were born at the Cleveland Zoo, receiving over three million (3,000,000) views during the baby otter campaign.

23. Beginning in 2013, Ms. Copeland started being subjected to an increased number of unwarranted corrective/disciplinary actions.

24. Although Ms. Copeland received only three (3) corrective/disciplinary write-ups in the then-27 years of her employment between 1985 through 2012, she received nine (9) write-ups since 2013.

4

25. The nine (9) write-ups were unfounded.

26. The majority of the write-ups were given to Copeland by Koscielny.

27. The same Lynn Koscielny that Copeland negatively reviewed back in the 1990s.

28. In or around 2006, Koscielny was hired by the Cleveland Metroparks Zoo and placed in a supervisory role over Copeland.

29. From the time that Koscielny took over the position of Associate Animal Curator, she has routinely picked on Copeland in an attempt to make the staff younger.

30. From the time Koscielny took over her supervisory role of Copeland, she has written up Copeland for no reason other than to build a record against her.

31. Koscielny would make it clear to Copeland and others that she was not happy that Copeland had to deal with issues which older employees face.

32. For example, Copeland's father passed away in 2013. After the passing of her father, Copeland received FMLA time off to care of her mother.

33. Koscielny was not happy that the FMLA time off was approved.

34. Koscielny stated "How does she [Debra Copeland] still have FMLA? Her dad is dead."

35. In June, 2017, Ms. Copeland put in a work order for an anteater feeding box.

36. After not receiving any response, Ms. Copeland was told that no one ever received the work order and there must be problems with the system.

37. The loss of a work order is an extremely rare and unusual circumstance in Ms. Copeland's experience.

38.  Ms. Copeland was doubtful that her work order was misplaced.

39.  Around that same time, younger animal keepers were routinely putting in work orders which were being approved with haste.

40.  In December, 2017, Copeland requested a cat "squeeze cage" which would assist her in giving medications to the animals she cared for.

41.  Squeeze cages are considered the safest method of giving treatments as the animal is in a controlled space and would be unable to attack the keeper or escape.

42.  Koscielny informed Ms. Copeland that she would not approve the request.

43.  In the absence of that protection and the danger which could arise because Koscielny refused to approve a squeeze cage, Ms. Copeland would be required to enter a small cage with an unsecured ocelot, a medium-sized wild exotic cat, close the door behind her and secure the animal for the veterinarians to administer medication.

44.  Koscielny made this decision knowing she would put her subordinate, Ms. Copeland, at unreasonable risk.

45.  Koscielny told Copeland she was "capable" of this because of her age and experience.

46.  At the same time, Koscielny did not require younger keepers to undertake this, or any other similar high risk or dangerous task.

47.  Koscielny would routinely treat Copeland differently because of her age and make her job more difficult in an effort to make her quit or retire.

48.   Koscielny also required Ms. Copeland to cross-train with animals in addition to those in the Rainforest.

49.   Over Ms. Copeland's articulated objections and safety concerns, Koscielny required her to cross-train with two other groups of animals besides the animals for which she had been responsible.

50.   Younger trainers who, like Copeland had only been assigned to care for one category of animals, were not required cross train with two other groups of animals like Copeland.

51.   Ms. Copeland was routinely held to a higher standard by Koscielny than younger keepers.

52.   Ms. Copeland was often given different directives by Koscielny than younger keepers because of her age.

53.   Between 1985 through 2014. Ms. Copeland received annual performance reviews.

54.   Every one of Ms. Copeland's annual performance reviews between 1985 through 2014 were positive.

55.   Starting in 2015, Koscielny cut off Ms. Copeland from annual performance reviews.

56.   Koscielny's reason for no longer reviewing Copeland was "You can't teach old dogs new tricks."

57.    Koscielny did not make this statement to any of the younger animal keepers.

7

58.   Even after singling Ms. Copeland out by cutting off her annual performance reviews, Koscielny continued to provide annual performance reviews to younger workers.

59.   The only variable between Koscielny's refusal to provide an annual performance review to Ms. Copeland and provided annual performance reviews to younger workers was age in order to lessen the likelihood of continuing Ms. Copeland's employment at the zoo.

60.   In or around 2017, Copeland witnessed another senior animal keeper receive unequal treatment because of his age.

61.   The senior keeper which made a routine infraction was punished by being denied access to a conference which he was already approved for.  A younger keeper who committed the same infraction around a similar time was still permitted to attend the conference.

62.   In 2018, Koscielny arbitrarily decided to reinstate Ms. Copeland's annual performance review.

63.   Koscielny's 2018 performance review of Ms. Copeland's 2018 review was the worst of her career in 33 years of employment, the lowest in The Rainforest and believed to be the worst performance review of any employee at the zoo.

64.   In April 2018, Ms. Copeland complained to human resources that she was being targeted because of her age.

65. Upon information and belief, the zoo's human resources personnel made no effort to investigate the charge and ignored the comparative differences between Ms. Copeland's treatment and the treatment of younger employees.

66. In August 2018, one of Ms. Copeland's duties involved caring for a fishing cat in the Rainforest.

67. A fishing cat is an animal that Ms. Copeland has successfully dealt with for decades.

68. On August 7, 2018, Michael O'Brien, a zoo maintenance employee, contacted Ms. Copeland that he needed to enter the fishing cat keeper holding area to perform maintenance work.

69. Copeland complied and gave permission to O'Brien to enter the keeper holder area over the radio.

70. Copeland knew that, according to routine procedure, the fishing cat was secure in a different part of the exhibit and would not be able to reach O'Brien so long as he did not unlock any of the secured doors or remove the "squeeze cage" which served as the barrier between him and the animal.

71. O'Brien was an experienced zoo maintenance employee and knew not to remove the barrier between himself and the fishing cat.

72. For a reason unknown, O'Brien removed the squeeze cage while he was working.

73.  After taking a break and returning to work, O'Brien claims that he was attacked by the fishing cat.

74.  The evidence does not support O'Brien's version of the events but instead supports a conclusion that, after O'Brien realized that he had let the fishing cat out of its exhibit and secure area, he himself attempted to catch the animal and cover up his mistake.

75.  The proper protocol would have been to report the incident and allow Ms. Copeland or another keeper to catch the animal.

76.  While attempting to catch the fishing cat on his own, O'Brien was injured.

77.  O'Brien, in an effort to avoid punishment for what was an obvious error on his part, blamed Ms. Copeland for the accident.

78.  After an "investigation" by the defendant Cleveland Metroparks Zoo, Ms. Copeland was determined to have been liable for the incident.

79.  Koscielny and defendant Cleveland Metroparks Zoo put Ms. Copeland on leave.

80.  On August 27, 2018, Koscielny and the Cleveland Metroparks Zoo terminated Copeland's employment.

81.  Defendant Cleveland Metroparks Zoo used the incident as a pretext to terminate Copeland's employment.

82. Defendants had long planned to terminate Ms. Copeland's employment because of her age and began building a file against her years before the incident with the fishing cat occurred.

83. Ms. Copeland's years of loyal service and excellent record were simply dismissed when the opportunity arose for Defendants to terminate her employment.

84. Copeland, who is 57, was replaced by an animal keeper believed to be twenty-eight (28) years old without the experience or expertise comparable to that of Ms. Copeland.

## Count I – Violations of ADEA by Defendant Cleveland Metroparks Zoo

85. Plaintiff Debra Copeland reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

86. Plaintiff Debra Copeland is a member of a protected class at fifty-seven (57) years old.

87. Plaintiff Debra Copeland was a strong and loyal employee of the zoo for thirty-three (33) years.

88. Ms. Copeland was punished and eventually had her employment terminated on account of age.

89. Copeland received disparate treatment because of her age.

90. Ms. Copeland was replaced by a twenty-eight (28) year old animal keeper.

91.   As a result of the acts and conduct of the defendants, she has suffered and continues to suffer the loss of her longstanding employment, opportunity to continue her employment, her salary, benefits, retirement and related matters.

92.   As a result of the acts and conduct of the defendants, Ms. Copeland has suffered and continues to suffer serious, genuine and consequential damages including personal injury, pain, suffering, emotional harm, mental distress and loss of quality of life.

93.   The acts and conduct of the Defendants were intentional, reckless and in wanton and reckless disregard of the rights and feelings of Plaintiff Debra Copeland.

## COUNT II- Violations of the Ohio Civil Rights Act by Defendant Lynn Koscielny and Cleveland Metroparks Zoo

94.   Plaintiff Debra Copeland reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

95.   Plaintiff Debra Copeland is a member of a protected class at fifty-seven (57) years old and worked for the zoo for over thirty (30) years.

96.   Ms. Copeland was punished and eventually had her employment terminated due to her age.

97.   Ms. Copeland received disparate treatment because of her age.

98.   Copeland was replaced by a twenty-eight (28) year old animal keeper.

99.   As a result of the acts and conduct of the Defendants, Plaintiff suffered and continues to suffer the loss of her longstanding employment, opportunity to continue her employment, her salary, benefits, retirement and related matters.

100.  As a result of the acts and conduct of the Defendants, Plaintiff has suffered and continues to suffer serious, genuine and consequential damages including personal injury, pain, suffering, emotional harm, mental distress and loss of quality of life.

101.  The acts and conduct of the Defendants were intentional, reckless and in wanton and reckless disregard of the rights and feelings of Plaintiff Debra Copeland.

WHEREFORE, Plaintiff respectfully requests the Court to grant the following relief:

A.   Declare that the acts and conduct of the defendants, jointly and severally, constitute violations of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.  §§ 621.01, *et seq.* (2018 Supp.), and the Ohio Civil Rights Act, Ohio Revised Code §§ 4112.01, *et seq.*,

B.   Order Defendant, Cleveland Metroparks Zoo, to institute and to otherwise carry out policies, practices and programs which provide equal employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices on account of age;

C.   Order Defendants to make whole Plaintiff by providing appropriate back pay with prejudgment interest and for other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

D.   Grant to the plaintiff and against defendants, jointly and severally, appropriate compensatory damages;

E.    Grant to the plaintiff against defendant Koscielny appropriate exemplary and punitive damages;

F.    Award Plaintiff costs in this action including statutory reasonable attorneys' fees as provided by statute;

G.    Grant such further relief as the Court deems just, equitable and in advance of the public interest.

| | |
|---|---|
| /s/ Jared S. Klebanow | /s/ Avery Friedman |
| JARED S. KLEBANOW (0092018) | AVERY FRIEDMAN (0006103) |
| KLEBANOW LAW, LLC | AVERY FRIEDMAN & ASSOCIATES |
| 850 Euclid Ave. Suite 701 | 850 Euclid Ave. Suite 701 |
| Cleveland, Ohio 44114 | Cleveland, Ohio 44114-3358 |
| T: (216) 621-8230 | T: (216) 621-9282 |
| jklebanow@klebanowlaw.com | avery@lawfriedman.com |

*Attorneys for Plaintiff Debra Copeland*

## TRIAL BY JURY DEMANDED

Plaintiff Debra Copeland hereby demands trial by jury.

/s/ Avery Friedman
Avery Friedman